Appellant Claudia Denise Spicer appeals a judgment of the Richland County Common Pleas Court convicting her of Aiding and Abetting Aggravated Murder in violation of R.C. 2903.01:
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR IN ITS INSTRUCTION TO THE JURY REGARDING THE TESTIMONY OF AN ACCOMPLICE BY FAILING TO SUBSTANTIALLY COMPLY WITH THE LANGUAGE REQUIRED BY OHIO REVISED CODE SECTIONS 2323.01(H)(2) AND 2923.03(D).
 II. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY INSTRUCTING THE JURY THAT THE TESTIMONY OF THE APPELLANT SHOULD BE WEIGHED BY THE SAME STANDARDS APPLIED TO OTHER WITNESSES, WHEN SUCH INSTRUCTION WAS IMMEDIATELY PRECEDED BY A CAUTIONARY INSTRUCTION REGARDING ACCOMPLICE TESTIMONY, THEREBY IMPLYING THAT APPELLANT'S TESTIMONY SHOULD BE WEIGHED IN THE SAME MANNER AS ACCOMPLICE TESTIMONY.
III. THE TRIAL COURT PREJUDICIALLY ERRED IN ITS CHARGE TO THE JURY BY IMPLYING THAT APPELLANT HAD, IN FACT, AIDED AND ABETTED IN THE COMMISSION OF THE OFFENSE CHARGED WHEN INSTRUCTING ON THE CULPABLE MENTAL STATE REQUIRED FOR CONVICTION OF THE OFFENSE CHARGED.
During the summer of 1996, through November, 1996, Lee Kelly lived in an apartment in Mansfield where juveniles would assemble. Kelly was twenty-eight years old, unemployed, and disabled due to exposure to Agent Orange. He permitted underage drinking and marijuana use in the apartment. In addition, Kelly had sexual relations with appellant, co-defendants Cassandra Clark and Heather Bunn, and the victim in the instant case, Amanda French.
Lee Kelly dated Heather Bunn for approximately two and one-half years. On September 29, 1996, the couple had an argument about Bunn's age, as she was only fifteen when they began dating, and had lied about her age. In addition, they argued about Kelly having a sexual relationship with Amanda French early in the month. Kelly grabbed Bunn by the neck and choked her, terminating the relationship. Three days later, Kelly and Amanda French began another sexual relationship.
Appellant and Heather Bunn were best friends, and Bunn had resided with appellant for almost one month. On November 6, 1996, Bunn and appellant drove to Kelly's house to pick up Cassandra Clark. The trio had job interviews that afternoon. At the apartment, Bunn began to argue with Amanda French about Kelly. Bunn pulled French by her hair from the sofa, dragging her outside the apartment. Bunn punched, pushed, and poured soda pop on French, and appellant spit soda pop on French.
Appellant, Bunn, and Clark then left together for their job interviews. They were interviewed and hired. Next, they stopped at a Burger King restaurant. They began talking about a plan to get even with French. They discussed using a gun. Bunn stated that she was going to put the final touches on French.
Next, the girls left Burger King, and traveled to Bunn's brother's house to get a gun. After obtaining the gun, they traveled to appellant's house.
Once inside her home, appellant telephoned Shawn McCardle, telling him to hurry over to her house because she had something to tell him which could not be explained over the telephone. When he arrived, appellant told him that she and Bunn had a plan to kill Amanda French, and that Bunn was going to do the shooting. Appellant told McCardle that if he went along with the plan, he did not have to watch French die.
Appellant and Bunn began to discuss how they were going to get French out of Lee Kelly's apartment. They decided to apologize to French at the apartment for assaulting her earlier in the day, thereby winning back her trust. After recruiting a friend, Stephon Rodgers, to telephone Kelly's apartment to see if French was there, appellant, Bunn, Clark, McCardle and Rodgers all piled into a car to drive to Kelly's apartment.
Upon entering the apartment, appellant and Bunn apologized to French, and shook her hand. As Rodgers was a friend of French, they used him to lure French outside the apartment after the apology session. French did, in fact, follow Rodgers out of the apartment and into Bunn's automobile.
Appellant operated the car under the direction of Bunn. Bunn demanded that appellant stop the car in a secluded area. Clark suggested that the girls to the bathroom together somewhere across a field. As appellant, Bunn, Clark, and French were walking, Bunn produced the revolver. Appellant and Bunn began arguing with French. Finally, Bunn said, "I am tired of talking" and struck French in the back of the head with the butt of the gun. Bunn then shot French at close range three times.
Appellant was arrested the next day. As appellant was sixteen years old at the time, she was bound over by the Richland County Juvenile Court to be tried as an adult. Appellant was thereafter indicted with one count of Aiding and Abetting Aggravated Murder, and one count Conspiracy to Commit Aggravated Murder, with a firearm specification. Following jury trial, appellant was found guilty on all counts. The court dismissed the conspiracy charge and sentenced appellant to a term of incarceration of twenty years to life, with an additional three years for the firearm specification.
 I.
Appellant argues that the court's instruction to the jury concerning the testimony of an accomplice did not substantially comply with R.C. 2923.01(H)(2) and 2923.03(D). Appellant further argues that the court omitted the accomplice testimony charge when instructing the jury on the charge of conspiracy.
As appellant failed to object to the instruction, we must find plain error in order to reverse. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State vs. Long (1978), 53 Ohio St.2d 91. Plain error does not exist unless, but for the error, the outcome of the trial clearly would have been different. State vs. Nicholas
(1993), 66 Ohio St.3d 431.
The court instructed the jury as follows:
 ". . . You have heard testimony from Cassandra Clark, another person who pled guilty to the same crime charged in this case, and is said to be an accomplice. An accomplice is one who knowingly joins another n the commission of a crime. Shawn McCardle may also be an accomplice in this case. Whether Cassandra Clark or Shawn McCardle were accomplices and the weight to be given their testimony are matters for you to determine from all the facts and circumstances in evidence.
 Testimony from a person you do find to be an accomplice should be viewed with great suspicion and weighed with great caution. . . ."
Tr. 812-813.
R.C. 2923.01(H)(2) provides that when an accomplice testifies against a defendant in a case in which the defendant is charged with conspiracy, the court shall substantially instruct the jury as follows:
. . . "The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
R.C. 2923.03(D) provides for the same instruction to be given when the charge is complicity, rather than conspiracy.
The trial court omitted the portion of the statutory instruction providing that testimony of an accomplice is not inadmissible because of the accomplices complicity, moral turpitude, or self-interest. Further, the trial court substituted "great suspicion" for "grave suspicion." While the better practice would be to give the entire instruction as set forth in the statute, we do not find plain error in the instruction as given by the trial court. See, State vs. Bounds
(March 13, 1998), Richland App. No. 96-CA-104, unreported. The court's instruction to the jury conveyed the essence of the admonition found in R.C. 2923.01(H)(2) and R.C. 2923.03(D). Upon an examination of the entire record, we cannot conclude that the outcome of the trial would have been different if the charge had been given verbatim.
Appellant also argues that the court omitted the charge concerning accomplice testimony when charging the jury on complicity. Again, because appellant did not object, we must find plain error in order to reverse.
In addressing the jury prior to beginning the instructions, the court indicated that the jury would be instructed in three general categories, the first being burden of proof in evaluating evidence. Tr. 807. While perhaps the better practice would be to give the accomplice testimony instruction within the specific charges of conspiracy and complicity, the instruction as given was not plain error.
The first Assignment of Error is overruled.
 II.
The trial court instructed the jury that the testimony of the defendant is to be weighed by the same rules that apply to the other witnesses. Tr. 813. Appellant argues that because the court gave this instruction immediately following the instruction on accomplice testimony, the jury was given the impression that appellant's testimony was to be weighed with great suspicion and caution. Again, we must find plain error to reverse.
When giving the instruction concerning accomplice testimony, the court specifically named the witnesses who could be accomplices. Tr. 813. The court's instruction that the jury should weigh the evidence of the defendant the same as for other witnesses, therefore, implied that the jury was not to weigh appellant's testimony by the same standard as the named accomplice witnesses. The instruction was not plain error.
The second Assignment of Error is overruled.
 III.
Appellant argues that when instructing the jury on the culpable mental state required for conviction, the court implied that appellant had, in fact, aided and abetted in the commission of the crime.
A single instruction may not be judged in isolation, but must be viewed in the context of the overall charge. E.g., State vs.Price (1979), 60 Ohio St.2d, 136.
The court instructed the jury as follows:
 ". . . To aid means to help, assist or strengthen. To abet means to encourage, counsel, incite or assist. To purposely aid or abet another in causing Amanda French's death is an essential element of this crime of aiding and abetting aggravated murder.
 A person who purposely causes the death of — a person does purposely cause the death of another when it is her specific intention to cause the death of that other person. It must be established in this case that at the time Ms. Spicer aided and abetted in the shooting of Amanda French, there was present in her mind, Ms. Spicer's mind, a specific intention to cause Ms. French's death. . . ."
Tr. 814-815.
Read in its entirety, the court did not impermissibly imply that appellant had, in fact, aided and abetted in the murder, but rather, the instruction conveyed to the jury that if they found the element of aiding and abetting had been proven by the State, they must also find that appellant purposely intended to cause French's death before they could convict.
The third Assignment of Error is overruled.
The judgment of the Richland County Common Pleas Court is affirmed.
By: Reader, V.J., Wise, P. J. and Gwin, J. concur.
----------------------
----------------------
 ---------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is affirmed. Costs to appellant.
----------------------
----------------------
 ---------------------- JUDGES